UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
HESHAM ZAGHLOUL ELDESOUKY,                    :
ABBAS ELSAYED ABBAS, AL-YASMIN               :
COMPANY and TASNEEM COMPANY,                 :         **OPINION AND ORDER**
                                              :
                         Plaintiffs,          :         11-CV-6986 (JLC)
          -v.-                                :
                                              :
HATEM ABDEL AZIZ, GENERAL TRADE              :
CORPORATION, INC., PYRAMID GRAIN             :
INTERNATIONAL, INC., and PROVISION           :
HALAL DISTRIBUTORS, INC.,                     :
                                              :
                         Defendants.          :
-------------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

Plaintiffs Hesham Zaghloul Eldesouky, Abbas Elsayed Abbas, Al-Yasmin Company, and

Tasneem Company sued Defendants Hatem Abdel Aziz, General Trade Corporation, Inc.,

Pyramid Grain International, Inc., and Provision Halal Distributors, Inc. to recover money that

had been paid to Defendants in 2011 for 2,000 metric tons of flaxseed.  Plaintiffs allege causes of

action for fraud, breach of contract, and conversion.  On November 26, 2013, Plaintiffs moved

for summary judgment against Aziz and for default judgment against the corporate defendants.

Defendants failed to respond to the motions, and as such, the Court considers them to be

unopposed.  For the reasons set forth herein, Plaintiffs' motions are granted in part and denied in

part.

## I.    FACTUAL BACKGROUND[1]

This case arises out of a contract to purchase flaxseed.  Plaintiff Hesham Zaghloul

Eldesouky ("Eldesouky") is the president of plaintiff corporation Tasneem Company

---

[1] "A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude
that the facts asserted in the statement are uncontested and admissible." *Biberaj v. Pritchard*

("Tasneem"), a company based in Alexandria, Egypt engaged in the grain import and export business. Plaintiffs' Statement of Undisputed Facts ("Rule 56.1 Stmt."), at ¶¶ 1-3 (Dkt. No. 50). Plaintiff Abbas Elsayed Abbas ("Abbas") is the principal of plaintiff corporation Al-Yasmin Company ("Al-Yasmin"), a grain import/export company in Port Said, Egypt. *Id.* at ¶¶ 4-6.[2]

In December 2010 or January 2011, Eldesouky contacted defendant Hatem Abdel Aziz ("Aziz") to discuss the potential purchase of 194 metric tons of flaxseed. Declaration of Hesham Zaghloul Eldesouky dated November 26, 2013 ("Eldesouky Decl."), at ¶ 7 (Dkt. No. 46). Eldesouky was familiar with Aziz as he had been Tasneem's corn supplier in a previous transaction. *Id.* at ¶ 6. During their discussion, Aziz mentioned that he had a large quantity of high quality flaxseed at a facility in Manitoba, Canada, and that he could sell 2,000 metric tons to Tasneem at $420 per metric ton. Rule 56.1 Stmt., ¶¶ 17-20. Given the large quantity of flaxseed Aziz contemplated selling, Eldesouky contacted Abbas to determine whether Abbas and his company, Al-Yasmin, would partner with Tasneem in the purchase. Eldesouky Decl., ¶ 10; Declaration of Abbas Elsayed Abbas dated November 26, 2013 ("Abbas Decl."), at ¶ 4 (Dkt. No. 47).

On January 13, 2011, Tasneem and Al-Yasmin entered into a contract with defendant General Trade Corporation, Inc. ("General Trade") for the purchase of 2,000 metric tons of

---

*Indus., Inc.*, 859 F. Supp. 2d 549, 553 n.3 (S.D.N.Y. 2012) (quoting *T.Y. v. New York City Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009)). However, a "Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) (quoting *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir. 2001)) (internal quotation marks omitted). Accordingly, the facts described herein are taken from Plaintiffs' Rule 56.1 statement to the extent they are supported by admissible evidence in the record.

[2] Throughout Plaintiffs' moving papers, they refer to Al-Yasmin as "Al-Yasim." In this opinion, the Court will refer to the company as Al-Yasmin, which is how it is identified in the Complaint.

flaxseed. Compl., Ex. 1 (Contract dated January 13, 2011); *see also* Rule 56.1 Stmt., ¶ 31. Aziz executed the contract on behalf of General Trade in his capacity as "Company Chairman." Compl., Ex. 1 (Contract). The contract provided that the parties would purchase 2,000 metric tons of flaxseed at $420 per metric ton, exclusive of shipping costs. *Id.* (Contract, Second Article); *see also* Rule 56.1 Stmt., ¶ 31. The flaxseed was to be supplied by General Trade. Compl., Ex. 1 (Contract, Third Article); Rule 56.1 Stmt., ¶ 33. Eldesouky agreed to pay 10% of the total cost, Abbas 75%, and Aziz 15%. Compl., Ex. 1 (Contract, Second Article); Rule 56.1 Stmt., ¶ 32. Pursuant to the contract, Abbas made a $70,000 down payment to Aziz by check dated January 13, 2011. Rule 56.1 Stmt., ¶ 35; Compl., Ex. 1 (Contract, Forth [*sic*] Article).[3]

The contract was conditioned on Plaintiffs' ability to inspect and test the flaxseed being purchased. *Id.* at ¶¶ 25, 29; Compl., Ex. 1 (Contract, Fifth Article). To that end, Plaintiffs sent Abbas' brother, Abdelrahman Abdo Abbass ("Abdo"), to inspect the flaxseed facility in Manitoba and to take a sample of the flaxseed for testing. Rule 56.1 Stmt., ¶ 36. In March 2011, Abdo travelled with Aziz to Manitoba. *Id.* at ¶ 39. In Manitoba, Aziz took Abdo to a warehouse containing a large quantity of flaxseed. *Id.* at ¶ 40. Aziz and a manager of the warehouse identified the flaxseed that had allegedly been reserved for Tasneem and Al-Yasmin. *Id.* at ¶ 42. Abdo took a sample of this flaxseed and sent it to a laboratory for testing. *Id.* at ¶ 43. The test results reflected that the flaxseed met the quality requirements in the contract. *Id.* at ¶ 44.

In light of the laboratory report, Eldesouky and Abbas began wiring payments to Aziz at a Manhattan JPMorgan Chase bank account in his name he had designated. *Id.* at ¶ 49. Tasneem made a single $181,440 payment to Aziz on March 30, 2011. *Id.* at ¶ 53. Abbas made separate

---

[3] The contract thus provided for a total cost of $840,000 (2,000 metric tons times $420 per ton), with Abbas paying $630,000 (75%), Eldesouky paying $84,000 (10%), and Aziz paying $126,000 (15%).

payments of $60,000 and $90,000 on March 29, 2011; a $95,000 payment on March 30; and a

$99,650 payment on April 12. Abbas Decl., Ex. R (bank transfer confirmations). Al-Yasmin

transferred $90,000 to Aziz on April 26, 2011. Rule 56.1 Stmt. at ¶ 55. Then, on May 12,

Tasneem made a $35,500 payment to a different JPMorgan Chase bank account held by Aziz's

company, Pyramid Grain International, Inc. ("Pyramid"), based on Aziz's representation that he

had made arrangements to ship the flaxseed and needed to make a payment towards the shipping

cost. *Id.* at ¶¶ 87-89. Together with the $70,000 down payment by check made out to Aziz,

from January through May 2011, Plaintiffs paid to Aziz and/or one of his businesses $721,590

($216,940 from Eldesouky/Tasneem and $504,650 from Abbas/Al-Yasmin).[4]

  After these payments had been made, the flaxseed shipment was delayed, allegedly due

to the weather in Canada, *id.* at ¶ 60, and, upon Plaintiffs' inquiries, Aziz began forwarding to

Eldesouky and Abbas various email communications with shipping agents regarding Plaintiffs'

flaxseed, *id.* at ¶¶ 64-73, 76. When Aziz forwarded the itinerary of a ship called the W-Star,

Eldesouky discovered that the ship was also carrying grain ordered by a company of which he

knew the manager. *Id.* at ¶¶ 78-82. This manager subsequently informed Eldesouky that Aziz,

through Pyramid, had contracted with a Canadian company called Richardson International

Limited ("Richardson") in April 2011 to purchase 4,000 metric tons of flaxseed at $660 per ton,

inclusive of freight. *Id.* at ¶¶ 83, 92-94. In connection with the Richardson contract, Pyramid

paid $443,000 of Plaintiffs' money to Richardson. *Id.* at ¶¶ 95-96.[5] Upon learning of this

---

[4] Given the contractual requirement that Eldesouky's company pay 10% (or $84,000) and
Abbas' company pay 75% (or $630,000), Eldesouky exceeded what was required and Abbas
did not pay his contractual share. Nonetheless, they collectively paid $721,590, which
exceeded their share of $714,000 by more than $7,000.

[5] There appears to be some confusion as to the purchase price and amount paid by Pyramid. The
contract dated April 26, 2011 between Richardson and Pyramid attached as Exhibit V to the
Abbas Declaration lists the purchase price as $715 per metric ton, but Eldesouky, Abbas, and

contract, and realizing that Aziz had used their money for this purchase, Eldesouky and Abbas contacted Richardson "in order to try to avoid [the] loss of the majority of the funds [they] paid to Aziz." Eldesouky Decl., ¶ 26; *see also* Rule 56.1 Stmt. at ¶¶ 107-08. Richardson agreed to credit to Eldesouky and Abbas the money it had received from Pyramid towards their own purchase, but only if they agreed to purchase the same amount of flaxseed as Pyramid had contracted to purchase and at the same price. *Id.* at ¶¶ 109-10.

Plaintiffs then agreed to purchase 4,000 metric tons of flaxseed from Richardson and Aziz agreed to transfer $278,360 to Richardson as the remainder of the money Plaintiffs had paid him and Pyramid. *Id.* at ¶¶ 111-12.[6] Richardson prepared an agreement between it, Pyramid, Al-Yasmin, and Tasneem reflecting this additional payment from Pyramid. *Id.* at ¶ 114. However, Aziz never executed the agreement on Pyramid's behalf nor did he send the payment to Richardson. *Id.* at ¶¶ 115-18. Therefore, Plaintiffs (through Abbas) borrowed money to pay the additional amount owed to Richardson under the new contract. *Id.* at ¶¶ 124-25. Plaintiffs never received any money back or any flaxseed from Aziz, Pyramid, or General Trade as a result of the original transaction. *Id.* at ¶¶ 129, 135.

---

Aziz describe the price as $660 per metric ton. *See* Eldesouky Decl., ¶ 18; Abbas Decl., ¶ 59; Letter from Mark Bierman dated September 22, 2014 (enclosing complete transcript of August 13, 2013 deposition of Hatem Abdel Aziz) ("Aziz Dep."), at 224 (not docketed). Similarly, both the April 26 contract between Richardson and Pyramid and the contract subsequently entered into by Richardson and Tasneem dated June 15, 2011 (as described further below) attached as Exhibit W to the Abbas Declaration describe Pyramid's payment as $443,750, not $443,000.

[6] Plaintiffs describe the $278,360 that Aziz/Pyramid agreed to pay as the "payment balance"; however, this amount plus the amount Pyramid already paid to Richardson does not equal the $721,590 Plaintiffs paid to Aziz and Pyramid. Assuming Pyramid paid $443,000 to Richardson, the actual "payment balance" is $278,590; if Pyramid paid $443,750, the payment balance is $277,840.

## II.    PROCEDURAL HISTORY

Plaintiffs brought this action on October 5, 2011 alleging four claims: breach of contract, conversion, common law fraud, and wire fraud. Aziz, proceeding *pro se*, answered the Complaint on October 26, 2011. (Dkt. No. 6). None of the corporate defendants answered or otherwise appeared. On February 14, 2012, Plaintiffs sent a letter to Judge Koeltl, to whom this case was originally assigned, seeking discontinuance of the action as against Pyramid in order to avoid dismissal for lack of subject matter jurisdiction, which Judge Koeltl granted. (Dkt. No. 12).[7] The parties then engaged in settlement negotiations overseen by the Court in May 2012 that concluded unsuccessfully.

On March 15, 2013, after a lengthy period of inactivity, the parties consented to proceed before me for all purposes pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 19-20). At this point, although the case was already well more than a year old, Plaintiffs had not filed proof of service of the Complaint on the corporate defendants. Accordingly, by order dated May 16, 2013, the Court dismissed the remaining corporate defendants, General Trade and Provision Halal Distributors, Inc. ("Provision Halal"), pursuant to Federal Rule of Civil Procedure 41(b). (Dkt. Nos. 25, 27).

On September 12, 2013, Plaintiffs moved pursuant to Rules 6(b) and 20 to reinstate General Trade and Pyramid as defendants. (Dkt. Nos. 36-38). Plaintiffs also moved for sanctions against Defendants based on Aziz's failure to produce certain documents Plaintiffs had requested in discovery and statements at his deposition that responsive documents may be lost and/or destroyed. *Id.* On October 10, in an oral decision read into the record, the Court granted

---

[7] Judge Koeltl had issued an order directing Plaintiffs to show cause why the case should not be dismissed for lack of subject matter jurisdiction in view of the fact that there is an alien who is a plaintiff and an alien who is a defendant. (Dkt. No. 9). As is discussed *infra*, it turned out that Pyramid was not an alien.

6

Plaintiffs' motion to reinstate General Trade and Pyramid as defendants while leaving the case dismissed as to Provision Halal. (Dkt. Nos. 40, 53). The Court also agreed to a sanction in the form of an adverse inference instruction at trial as a result of Aziz's failure to produce relevant documents and precluded Aziz from using documents that had not been provided to Plaintiffs in discovery at trial or in response to any motion. *Id.* The Court further advised the parties that it would consider making an adverse inference regarding the documents alleged to be lost or destroyed on any motion for summary judgment or default judgment. *Id.*

Plaintiffs served General Trade and Pyramid with copies of the summons and complaint on October 16, 2013. (Dkt. Nos. 41-42). Aziz failed to retain counsel for the corporate defendants by November 12 as directed by the Court's October 10 Order. (Dkt. No. 40). As such, the Court permitted Plaintiffs to move for summary judgment against Aziz and default judgment against General Trade and Pyramid. (Dkt. No. 43). Plaintiffs so moved on November 26. *See* Notice of Motion (Dkt. No. 44); Declaration of Mark Bierman dated November 26, 2013 ("Bierman Decl.") (Dkt. No. 45); Abbas Decl.; Eldesouky Decl.; Declaration of Abdelrahman "Abdo" Abbass dated November 26, 2013 ("Abdo Decl.") (Dkt. No. 48); Plaintiffs' Memorandum of Law in Support of the Motion for Judgment Pursuant to Fed. R. Civ. P. 55 and 56 (Dkt. No. 49) ("Pl. Mem."). Neither Aziz nor the corporate defendants have submitted any responsive papers. Following additional submissions from Plaintiffs regarding subject matter and personal jurisdiction requested by the Court, as discussed below, the Court considers the motions ready for decision.

## III.   DISCUSSION

### A.   The Court Has Jurisdiction Over This Case

#### 1.   Subject Matter Jurisdiction

As a preliminary matter, the Court concludes that it has subject matter jurisdiction to adjudicate this case as a result of the diversity of the parties. *See* 28 U.S.C. § 1332(a)(2); *accord Universal Licensing Corp. v. Paola del Lungo, S.p.A.*, 293 F.3d 579, 581-82 (2d Cir. 2002).[8] Federal courts have "an independent obligation to consider the presence or absence of subject matter jurisdiction" over the actions proceeding before them. *Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006); *accord Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative."). For purposes of evaluating diversity, a corporation is considered a citizen of the state in which it was incorporated and the state of its principal place of business. 28 U.S.C. § 1332(c)(1); *IGY Ocean Bay Properties, Ltd. v. Ocean Bay Properties I Ltd.*, 534 F. Supp. 2d 446, 448-49 (S.D.N.Y. 2008) ("The question of diversity jurisdiction for corporations with dual citizenship is not an either/or proposition."). A corporation's principal place of business is "the place where a corporation's officers direct, control, and coordinate the corporation's activities," usually "the place where the corporation maintains its headquarters." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

---

[8] Contrary to Plaintiffs' contention, Compl. ¶ 5, the Court does not have federal question jurisdiction arising under the Wire Fraud Act, 18 U.S.C. § 1343, because, as discussed below (*infra* n.16), there is no private right of action under the Wire Fraud Act. *See Perpetual Secs., Inc. v. Tang*, 290 F.3d 132, 137 (2d Cir. 2002) ("Simply raising a federal issue in a complaint will not automatically confer federal question jurisdiction. Rather, we ask 'whether the cause of action alleged is *so patently without merit* as to justify . . . the court's dismissal for want of jurisdiction.'") (quoting *Duke Power Co. v. Carolina Env. Study Group*, 438 U.S. 59, 70 (1978)).

While reviewing Plaintiffs' pending motions, the Court became concerned that there was a potential issue with its subject matter jurisdiction because all Plaintiffs were alleged to be aliens, Compl. ¶¶ 2-3, and defendant Pyramid was identified as a foreign-incorporated entity (Dkt. No. 5), making diversity jurisdiction impossible. *See* 28 U.S.C. § 1332(a)(2); *Universal Licensing Corp.*, 293 F.3d at 581-82. Accordingly, on June 6, 2014, the Court ordered Plaintiffs to show cause why this case should not be dismissed for lack of subject matter jurisdiction. (Dkt. No. 56). In their response to the Court's Order to Show Cause, Plaintiffs have satisfactorily explained that, although they initially alleged that defendant Pyramid was a foreign-incorporated entity, which would have destroyed diversity between the parties (and had led to its earlier voluntary dismissal), Pyramid is actually a New Jersey corporation, and has been so at all relevant times. *See* Declaration of Yasser Helal dated June 19, 2014 ("Helal Decl.") (Dkt. No. 57); Plaintiffs' Memorandum of Law dated June 20, 2014 ("Subject Matter Juris. Mem."), at 4 (Dkt. No. 59). They further clarified that the declaration previously submitted by Plaintiffs' counsel identifying Pyramid as a Canadian corporation was inaccurate, having been made prior to the parties engaging in any discovery. *See* Helal Decl., ¶ 3; Subject Matter Juris. Mem. at 4. Through discovery, Plaintiffs learned that Pyramid is a New Jersey entity, incorporated there by Aziz on April 14, 2011. Subject Matter Juris. Mem. at 4-5; Aziz Dep. at 40-41. The company's certificate of incorporation lists Pyramid's registered office and "main business address" as 187 East Front Street, Plainfield, New Jersey, 07081. Helal Decl., Ex. A (Certificate of Incorporation).

Plaintiffs have also established that Pyramid's principal place of business is in New Jersey. Subject Matter Juris. Mem. at 5-6. They note that, in its April 26, 2011 contract with Richardson, Pyramid used the 187 East Front Street address that appears on its certificate of

incorporation.  Supplemental Declaration of Yasser Helal dated June 25, 2014, Ex. B (Dkt. No. 62).  Moreover, during his deposition, Aziz testified that he is Pyramid's sole shareholder and director, the company has no employees, and it maintains its principal office at his home in New Jersey, where he stores the company's books and records.  Aziz Dep. at 41-42, 44.

Given this more developed record, the Court is now satisfied that it has subject matter jurisdiction over this action.

### 2.    Personal Jurisdiction

The Court also directed Plaintiffs to address whether the Court has personal jurisdiction over the corporate defendants.  (Dkt. No. 56).  Although Plaintiffs initially failed to respond to this inquiry, after the Court's second request, (Dkt. No. 64), they eventually provided a response.  *See* Plaintiffs' Memorandum of Law dated September 8, 2014 ("Personal Juris. Mem.") (Dkt. No. 66).  In their submission, they argued as a threshold matter that a court may not raise the issue of personal jurisdiction *sua sponte*, and that, in any event, the Court has personal jurisdiction over both Pyramid and General Trade.

Because the Court is adjudicating Plaintiffs' motion for default judgment in addition to the motion for summary judgment, it will consider whether it has personal jurisdiction over the corporate defendants.  *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011) ("[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant.").  Although whether a court *must* evaluate personal jurisdiction is an "open question," *Johnson & Johnson v. Azam Int'l Trading*, No. 07-CV-4302 (SLT) (SMG), 2013 WL 4048295, at *4 (E.D.N.Y. Aug. 9, 2013), in analyzing personal jurisdiction, "courts in this circuit draw an 'important distinction . . . between appearing and non-appearing parties.'"  *Hua Chen v. Honghui Shi*, No. 09-CV-8920 (RJS), 2013 WL 3963735, at

10

*4 (S.D.N.Y. Aug. 1, 2013) (quoting *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Grp.*, 619

F.3d 207, 213 (2d Cir. 2010)). Here, because defendant Aziz "has appeared and consented . . . to

the jurisdiction of the court," the Court will "not raise personal jurisdiction *sua sponte*" as to

him. *Sinoying Logistics Pte Ltd.*, 619 F.3d at 213 (emphasis removed). However, the corporate

defendants, General Trade and Pyramid, have not answered the Complaint or otherwise appeared

in this action. Accordingly, the Court will consider whether it has personal jurisdiction over the

corporate defendants before evaluating Plaintiffs' motion for default judgment against them.

In a diversity case, a court must evaluate personal jurisdiction according to the law of the

forum state. *See Sletten v. LiquidHub, Inc.*, No. 13-CV-1146 (NRB), 2014 WL 3388866, at *11

(S.D.N.Y. July 11, 2014) (citing *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir.

2006)). In New York, the state's long-arm statute, Section 302 of the Civil Practice Law and

Rules ("C.P.L.R."), governs "so long as the district court's exercise of jurisdiction comports with

the requirements of due process." *D.H. Blair & Co.*, 462 F.3d at 104. Stated differently, "[i]f

jurisdiction lies [under the C.P.L.R.], we consider whether the . . . exercise of personal

jurisdiction over a foreign defendant comports with due process protections established under the

United States Constitution." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161,

168 (2d Cir. 2013) ("*Licci II*").

It appears that the only connection this case has to the Southern District of New York is

the Manhattan bank accounts held by Pyramid and Aziz. Compl. ¶ 5; Eldesouky Decl., ¶¶ 12,

14, Ex. H (Piraeus Bank Payment Confirmation), Ex. J (Piraeus Bank Payment Confirmation);

Abbas Decl., ¶¶ 26-28, Ex. R (bank transfer confirmations). Plaintiffs have not alleged that they

wired money to any New York-based accounts held by General Trade. Instead, they contend

that Aziz's use of the New York banking system was in his capacity as an agent of General

11

Trade. Personal Juris. Mem. at 12-15. For the reasons that follow, the Court finds that it has

personal jurisdiction over Pyramid, but not General Trade.

### a)   New York State Long-Arm Jurisdiction

In relevant part, New York's long-arm statute provides that "a court may exercise

personal jurisdiction over any non-domiciliary . . . who in person or through an agent transacts

any business within the state." C.P.L.R. § 302(a)(1). To determine "whether personal

jurisdiction may be exercised under section 302(a)(1), a court must decide (1) whether the

defendant transacts any business in New York and, if so, (2) whether [the] cause[s] of action

[alleged in the complaint] arise[] from such a business transaction." *Licci ex rel. Licci v.*

*Lebanese Canadian Bank, SAL*, 673 F.3d 50, 60 (2d Cir. 2012) (internal citations omitted)

("*Licci I*"). Under the first prong, the record must reflect that a defendant "purposefully

avail[ed] itself of the privilege of conducting activities within New York." *Ge Dandong v.*

*Pinnacle Performance Ltd.*, 966 F. Supp. 2d 374, 381 (S.D.N.Y. 2013) (quoting *Licci I*, 673 F.3d

at 61) (internal quotation marks omitted). Under the second prong, "there must be 'a substantial

nexus' between the transaction of business and the claim." *D.H. Blair & Co.*, 462 F.3d at 105

(quoting *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 31 (2d Cir.

1996)). Section 302 is described as "a 'single act statute' and proof of one transaction in New

York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so

long as the defendant's activities here were purposeful and there is a substantial relationship

between the transaction and the claim asserted." *Chloé v. Queen Bee of Beverly Hills, LLC*, 616

F.3d 158, 170 (2d Cir. 2010) (quoting *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467

(1988)) (internal quotation marks omitted); *accord Ge Dandong*, 966 F. Supp. 2d at 382

("Section 302(a)(1)'s requirements may be satisfied by a single act within New York.") (quoting *Licci I*, 673 F.3d at 62).

In evaluating what degree of contact is necessary to establish that a defendant has transacted business in New York under the first prong, the New York Court of Appeals recently confirmed that a defendant's purposeful "use of a correspondent bank account in New York, even if no other contacts between the defendant and New York can be established" suffices to establish that the defendant transacted business in New York. *Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327, 338 (2012). Subsequent cases in this District have applied this principle to non-correspondent bank accounts as well. *See, e.g.*, *Ge Dandong*, 966 F. Supp. 2d at 382-83; *HSH Nordbank AG New York Branch v. Street*, No. 11-CV-9405 (DLC), 2012 WL 2921875, at *4-5 (S.D.N.Y. July 18, 2012). Here, Plaintiffs have demonstrated that Pyramid maintained a New York bank account to which Tasneem made a $35,500 wire transfer. Eldesouky Decl., ¶ 14, Ex. J (Piraeus Bank Payment Confirmation). Moreover, Aziz testified that he transferred money from Plaintiffs held in his personal account to the New York account held by Pyramid. Aziz Dep. at 191-92, 203-04.

Under the second prong, Pyramid's use of a New York bank account must have a "substantial relationship" or reflect an "articulable nexus" to Plaintiffs' claims. *Licci*, 20 N.Y.3d at 339 (internal citations omitted). This aspect of New York's long-arm jurisdiction test "does not require a causal link between the defendant's New York business activity and a plaintiff's injury. Instead, it requires 'a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim.'" *Licci II*, 732 F.3d at 168-69 (quoting *Licci*, 20 N.Y.3d at 339). Here, the money that Plaintiffs wired pursuant to their contract with General Trade, and the return of which they seek

13

by this lawsuit, was sent to Pyramid's account in New York. These facts are sufficient to establish jurisdiction under New York's long-arm statute.

Having determined that receiving Plaintiffs' money at a New York bank account suffices to establish personal jurisdiction over Pyramid, the Court next considers whether Aziz's use of his New York bank account was in his capacity as General Trade's agent such that the company is also subject to personal jurisdiction in New York. "To be considered an agent for jurisdictional purposes, the alleged agent must have acted in the state for the benefit of, and with the knowledge and consent of the non-resident principal." *Accurate Grading Quality Assur., Inc. v. Thorpe*, No. 12-CV-1343 (ALC), 2013 WL 1234836, at *3 (S.D.N.Y. Mar. 26, 2013) (quoting *CutCo Industries, Inc. v. Naughton*, 806 F.2d 361, 366 (2d Cir. 1986)) (alteration and internal quotation marks omitted); *accord RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 402 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010). Plaintiffs must also show that General Trade "exercised some control over [Aziz] in the matter." *Kreutter*, 71 N.Y.2d at 467.

The fact that Aziz acted as an agent for General Trade when contracting with Plaintiffs is not disputed. *See, e.g.*, Aziz Letter-Motion to Dismiss dated July 15, 2013 (Dkt. Nos. 31-32) ("[Aziz] was acting purely as an agent for General Trade Corporation when contracting with the plaintiff's [*sic*]."). Aziz signed the contract at the heart of this case in his capacity as General Trade's Chairman, that is, as the company's agent. Compl., Ex. 1 (Contract). However, he then directed Plaintiffs to make the payments required by the contract to his personal New York bank account. Aziz Dep. 180-81. It is not clear how Aziz's use of his personal New York bank account inured to the benefit of General Trade or why the company would know of and consent to such an action, let alone exercise its control over Aziz to this end. While Plaintiffs state in a conclusory fashion that "Aziz, acting on General Trade's behalf, directed some of Plaintiffs'

payments on the contract be wired to an account held by Aziz," Personal Juris. Mem. at 14

(citing Aziz Dep. 180-81), they provide no factual basis, apart from Aziz's corporate title at

General Trade, to find that General Trade knew or approved of Plaintiffs' payments being

directed to Aziz's personal account or transferred to Pyramid.[9]  Without more, Plaintiffs have not

presented a *prima facie* case of jurisdiction over General Trade.  *See NYKCool A.B. v. Pac. Int'l*

*Servs., Inc.*, No. 12-CV-5754 (LAK), 2014 WL 3605632, at *5 (S.D.N.Y. July 15, 2014) ("After

discovery, the plaintiff's prima facie showing, necessary to defeat a jurisdiction testing motion,

must include an averment of facts that, if credited by the trier, would suffice to establish

jurisdiction over the defendant.") (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d

194, 197 (2d Cir. 1990)); *accord S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123,

138 (2d Cir. 2010).  Accordingly, this case is dismissed as to General Trade for lack of personal

jurisdiction.  *See, e.g.*, *de Ganay v. de Ganay*, No. 11-CV-6490 (NRB), 2012 WL 6097693, at *7

(S.D.N.Y. Dec. 6, 2012) (court may *sua sponte* dismiss case for lack of personal jurisdiction)

(citing *Sinoying Logistics Pte. Ltd.*, 619 F.3d at 213-14).

###    b)    Due Process

The Court next considers whether its exercise of jurisdiction over Pyramid comports with

the Due Process Clause of the United States Constitution.[10]  The Due Process Clause requires

---

[9]  The cases cited by Plaintiffs are readily distinguishable. *See* Personal Juris. Mem. at 14-15.  In *United Rope Distr., Inc. v. Kimberly Line, Kim-Sail Ltd.*, 770 F. Supp. 128, 132 (S.D.N.Y. 1991), the non-resident company itself directed that plaintiffs make payment to another company's New York account, and in *HSH Nordbank AG New York Branch*, 2012 WL 2921875, at *4, the New York bank accounts were held jointly by the non-resident individuals and their family trust.

[10]  Because the Court has determined that, under New York's long-arm statute, it does not have personal jurisdiction over General Trade, it need not reach the due process analysis as it applies to General Trade. *See, e.g.*, *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208-09 (2d Cir. 2001).

that a defendant have "certain minimum contacts with [the forum] such that the maintenance of

the suit does not offend 'traditional notions of fair play and substantial justice.'" *International

Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945) (citation omitted). "Where a court

finds that it has jurisdiction under C.P.L.R. § 302(a)(1), only in 'rare' cases will the exercise of

jurisdiction fail to comport with due process." *Mago Int'l LLC v. LHB AG*, No. 13-CV-3370

(CM), 2014 WL 2800751, at *5 (S.D.N.Y. June 18, 2014) (quoting *Licci II*, 732 F.3d at 170).

Despite its rarity, a court must still conduct the due process analysis. *Id.* "To determine whether

the exercise of personal jurisdiction comports with due process, the court must engage in a two

part analysis: 'the minimum contacts inquiry and the reasonableness inquiry.'" *Pop Bar, LLC v.

Fellows*, No. 12-CV-06647 (TPG), 2013 WL 4446227, at *4 (S.D.N.Y. Aug. 19, 2013) (quoting

*Chloé*, 616 F.3d at 164).

When inquiring into minimum contacts, the Court "evaluate[s] the quality and nature of

the defendant's contacts with the forum state under a totality of the circumstances test." *Licci II*,

732 F.3d at 170 (quoting *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 424 (2d Cir. 2007))

(internal quotation marks omitted). Here, Plaintiffs have demonstrated that Pyramid had

"sufficient contacts with [New York] to justify the court's exercise of personal jurisdiction."

*Chloé*, 616 F.3d at 164. As in *Licci*, by directing some or all of Plaintiffs' payments to

Pyramid's New York bank account—that is, "the selection and repeated use of New York's

banking system, as an instrument for accomplishing the alleged wrongs for which the plaintiffs

seek redress," *Licci II*, 732 F.3d at 171—Pyramid "purposely availed itself of the privilege of

doing business in [New York] and could foresee being haled into court there." *Id.* at 170

(citation omitted). In other words, Pyramid, through its use of a New York bank account,

"invok[ed] the benefits and protections of [New York's banking] laws." *Burger King Corp. v.

*Rudzewicz*, 471 U.S. 462, 475 (1985) (citation omitted); *see, e.g.*, *Ge Dandong*, 966 F. Supp. 2d at 382-84 (jurisdiction over out-of-state corporation that used New York bank account in alleged fraudulent scheme). Further, there is no reason to think that directing Plaintiffs' payments to a New York bank account was "'essentially adventitious' or 'coincidental,' rather than 'purposeful.'" *MacDermid, Inc. v. Canciani*, 525 F. App'x 8, 11 (2d Cir. 2013) (quoting *Licci*, 20 N.Y.3d at 338); *accord Burger King Corp.*, 471 U.S. at 475 (distinguishing actions in a forum state characterized as "random," "fortuitous," or "attenuated").

"While the exercise of jurisdiction is favored where the plaintiff has made a threshold showing of minimum contacts at the first stage of the inquiry, it may be defeated where the defendant presents 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Chloé*, 616 F.3d at 165 (quoting *Burger King Corp.*, 471 U.S. at 477). To be considered "reasonable" under the second prong of the Due Process inquiry, the Court's exercise of jurisdiction must comport with "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cnty.*, 480 U.S. 102, 113 (1987) (citation omitted). The Supreme Court has set forth five factors to consider when evaluating the reasonableness of jurisdiction:

> (1) the burden that the exercise of jurisdiction will impose on the
> defendant; (2) the interests of the forum state in adjudicating the case;
> (3) the plaintiff's interest in obtaining convenient and effective relief;
> (4) the interstate judicial system's interest in obtaining the most efficient
> resolution of the controversy; and (5) the shared interest of the states in
> furthering substantive social policies.

*Chloé*, 616 F.3d at 164-65 (citing *Asahi*, 480 U.S. at 113-14). First, the burden on Pyramid to appear would not have been great given that its owner, Aziz, already appeared, consenting to this Court's jurisdiction. Second, New York has an interest in adjudicating cases related to "banking activity to ensure that its system is not used" to "nefarious ends." *Licci II*, 732 F.3d at 174. The

third and fourth factors also favor jurisdiction because Plaintiffs have an interest in resolving

their claims against Aziz and Pyramid in a single proceeding, as does the interstate court system

have an interest in their efficient adjudication.  The final factor is "neutral."  *Chloé*, 616 F.3d at

173.  Accordingly, the Court concludes that it has personal jurisdiction over Pyramid.

**B.     Adverse Inference for Spoliation**

        Plaintiffs previously sought sanctions against Aziz for his loss and/or destruction of

relevant documents (Dkt. Nos. 36-38), which the Court granted in part in an oral decision on

October 10, 2013 (Dkt. No. 53) and by order memorializing that ruling (Dkt. No. 40).  In

deciding to issue an adverse inference instruction at trial, the Court noted that it would "consider

making such an adverse inference on any motion for summary judgment."  (Dkt. No. 40).

Plaintiffs now seek precisely such an adverse inference as a result of Aziz's spoliation of

financial records and communications with grain suppliers and shipping companies.  Pl. Mem. at

12-14.  Specifically, Plaintiffs assert that:  (1) "the financial data that has not been produced is

necessary in order to demonstrate how plaintiffs' funds were transferred, spent, or otherwise

disposed of"; (2) "Aziz's communications with grain suppliers are relevant to demonstrate that

Aziz, Pyramid and General Trade misled the plaintiffs as to his access to and ownership of the

grain contracted for . . . [and] facts related to his entry into contracts without plaintiffs'

knowledge or consent, and the cancellation of contracts without plaintiffs' knowledge or

consent"; (3) "Aziz's communications with shipping companies are relevant to prove . . . that

Aziz fabricated shipment schedules in furtherance of the scheme alleged"; and

(4) communications with Plaintiffs related to Aziz's claim "that the contract was modified" are

needed. Pl. Mem. at 13-14.

Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Byrnie v. Town of Cromwell, Board of Education*, 243 F.3d 93, 107 (2d Cir. 2001) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)). "Where a party's misconduct violates a court order, Rule 37(b) allows a court to impose on that party sanctions of varying degrees of severity. Sanctions may include attorney's fees, adverse inferences, preclusion of evidence, striking pleadings, and default judgment." *Hawley v. Mphasis Corp.*, 302 F.R.D. 37, 46 (S.D.N.Y. 2014). To justify an adverse inference for the spoliation of evidence, a court must find: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (quoting *Byrnie*, 243 F.3d at 107-12).

While the Court has already decided to issue an adverse inference instruction at trial, it finds that an adverse inference is not necessary in its adjudication of the summary judgment motion before it, and declines to draw one on the present record. As a practical matter, Aziz has already admitted at his deposition much of what Plaintiffs argue they need the adverse inference to prove. First, financial data is not needed to prove that Aziz transferred Plaintiffs' money from his personal account to Pyramid's account and then, in turn, to Richardson, spending the remainder on non-business-related expenses. Aziz has said as much. *See* Aziz Dep. at 180-82, 191-92, 203-04, 210-12. Second, Aziz's communications with grain suppliers are not necessary to prove that Aziz did not own any flaxseed, another fact that he has readily admitted. *See id.*

19

at 65, 117. Nor is an adverse inference appropriate to oppose what Aziz has alleged were

modifications to the amount of grain to be provided under the contract. *See* Answer; Aziz Dep.

at 197-98, 208-09. At this juncture, Aziz's factually unsupported argument that such

communications took place is not enough to give credence to his assertion. Moreover, Plaintiffs'

argument appears to be that such communications never took place, not that they took place and

were subsequently spoliated. Finally, while communications between Aziz and shipping

companies may be relevant in that they are "sufficiently probative to satisfy Rule 401 of the

Federal Rules of Evidence," *Residential Funding*, 306 F.3d at 108-09, Plaintiffs have not offered

any evidence that these "would have been favorable to [them]." *Zubulake v. UBS Warburg LLC*,

229 F.R.D. 422, 431 (S.D.N.Y. 2004). Additionally, it is not clear from the present record that

any such emails existed beyond those already included as exhibits. In any event, these emails are

not necessary for the Court's resolution of the pending motion.

## C.   Motion for Summary Judgment Against Aziz

Plaintiffs move for summary judgment against Aziz on their claims for breach of

contract, common law fraud, and conversion. Summary judgment is appropriate where the

moving party "shows that there is no genuine dispute as to any material fact" and that it "is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Gonzalez v. City of

Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013). A fact is material if it "might affect the outcome

of the suit under the governing law" of the claims involved. *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986). A genuine dispute as to a material fact exists where "the evidence is

such that a reasonable jury could return a verdict for the nonmoving party." *Ramos v. Baldor

Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012) (citation omitted). A party must cite to

"particular parts of materials in the record," including depositions, documents, affidavits,

declarations, and admissions in support of its assertions, or show that the adverse party "cannot produce admissible evidence" to support its own asserted facts.  Fed. R. Civ. P. 56(c)(1)(B).

"The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) (citation omitted); *accord Gallo v. Prudential Residential Servs., Ltd.*, 22 F.3d 1219, 1224 (2d Cir. 1994) (defining court's objective as "issue-finding" and not "issue-resolution").  At this stage, the Court does not engage in trial-like "[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (citation omitted).  Instead, in considering the record, the Court must "resolve all ambiguities and draw all reasonable inferences against the movant." *Beyer v. County of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008) (citation omitted).  If the court subsequently determines that, even "with all permissible inferences and credibility questions resolved in favor" of the non-moving party, "there can be but one reasonable conclusion as to the verdict"— that is, for the moving party—summary judgment is appropriate. *Kaytor*, 609 F.3d at 546 (quoting *Liberty Lobby*, 477 U.S. at 250).

The moving party bears the initial burden of establishing that there are no genuine disputes as to any material facts. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Generally, the burden then shifts to the non-moving party to "'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial.'" *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (quoting *Celotex*, 477 U.S. at 324).  Where, as here, a summary judgment motion is unopposed, a court "must still assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material

21

fact and its entitlement to judgment as a matter of law." *Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). While Local Civil Rule 56.1(b) "permits the court to conclude that the facts asserted in the [Rule 56.1] statement are uncontested and admissible" where a nonmoving party fails to respond, *T.Y. v. New York City Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009), the court "may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion." *Vt. Teddy Bear Co.*. 373 F.3d at 244; *accord Jackson v. Fed. Exp.*, 766 F.3d 189, 194 (2d Cir. 2014) ("Before summary judgment may be entered, the district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed.").

### 1.    **Plaintiffs' Breach of Contract Claim**

Under New York law, to succeed on a breach of contract claim, a plaintiff must prove "(1) [the existence of] an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011) (citations omitted). Summary judgment may be appropriate where "the contractual language on which the moving party's case rests is found to be wholly unambiguous and to convey a definite meaning." *Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (2d Cir. 2008); *accord Law Debenture Trust Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 465 (2d Cir. 2010) ("[T]he initial question for the court on a motion for summary judgment with respect to a contract claim is whether the contract is unambiguous with respect to the question disputed by the parties.") (citation omitted). The ambiguity of a contract provision is a question of law for the court, and ambiguity will be found "where the terms of the contract could suggest

more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Law Debenture Trust Co.*, 595 F.3d at 466 (citation omitted).

As a preliminary matter, the language of the contract at issue here is clear and unambiguous. Al-Yasmin and Tasneem agreed to purchase a set amount of flaxseed (2,000 metric tons) at an agreed upon price ($420 per metric ton exclusive of shipping) to be supplied by the "third party," General Trade. Compl., Ex. 1 (Contract, Second and Third Articles). The contract further provided that Eldesouky, Abbas, and Aziz would share in the costs of the flaxseed order. *Id.* (Second Article).

Moreover, the record reflects that Plaintiffs performed their obligations under the contract. By the time Plaintiffs learned that Aziz had negotiated a contract with Richardson for significantly more flaxseed at a higher price, Plaintiffs had paid all of the money owed under the contract. Eldesouky Decl., ¶ 12; Abbas Decl., ¶¶ 15, 26-28. The record is also clear that General Trade never provided flaxseed to Plaintiffs as required under the contract, Abbas Decl., ¶ 92, and that Aziz never met his cost-sharing obligation of 15% of the flaxseed purchase price. Compl., Ex. 1 (Contract, Forth [*sic*] Article); Aziz Dep. at 193 (Q: "You put up zero dollars under the contract?" A: "Yes. No Money."), 213-14.

Furthermore, there are sufficient facts in the record to hold Aziz liable for General Trade's breach of contract. Generally, "a non-party to a contract is not bound by the contract." *Javier v. Beck*, No. 13-CV-2926 (WHP), 2014 WL 3058456, at *9 (S.D.N.Y. July 3, 2014) (citing *Abraham Zion Corp. v. Lebow*, 761 F.2d 93, 103 (2d Cir. 1985)); *accord Ferring B.V. v. Allergan, Inc.*, 4 F. Supp. 3d 612, 625 (S.D.N.Y. 2014) ("It is hornbook law that a non-signatory

to a contract cannot be named as a defendant in a breach of contract action unless it has

thereafter assumed or been assigned the contract.") (citation omitted).  Although Plaintiffs state

in a conclusory fashion that the contract reflects their intent to "purchas[e] flaxseed from *Aziz*

and General Trade," Pl. Mem. at 15 (emphasis added), the contract provides that General Trade,

not Aziz, was to provide the flaxseed.  *See* Compl., Ex. 1 (defining General Trade as the "third

party" who is to supply the flaxseed).  The fact that Aziz signed the contract in his official

capacity is not dispositive of his personal liability for General Trade's breach.  *See Badian v.*

*Elliott*, 165 F. App'x 886, 889-90 (2d Cir. 2006) (requiring veil piercing to hold corporate officer

liable for company's breach of contract); *Banks v. Corr. Servs. Corp.*, 475 F. Supp. 2d 189, 197

(E.D.N.Y. 2007) (same) (citations omitted).[11]

However, a corporate officer may be liable "for inducing [the] corporation to violate its

contractual obligations" where that officer's "activity involves separate tortious conduct or

results in personal profit."  *Stern v. H. DiMarzo, Inc.*, 77 A.D.3d 730, 731, 909 N.Y.S.2d 480,

481 (2d Dep't 2010) (collecting cases); *accord Heineman v. S & S Mach. Corp.*, 750 F.

Supp. 1179, 1189 (E.D.N.Y. 1990) ("[W]here a corporate officer is charged with independent

torts or predatory acts or where the complaint charges that he personally profited from his acts,

the officer may be liable on the contract claim.") (citing *Courageous Syndicate, Inc. v. People-*

*to-People Sports Comm., Inc.*, 141 A.D.2d 599, 600, 529 N.Y.S.2d 520, 521 (2d Dep't 1988) and

*Armada Supply, Inc. v. S/T Agios Nickolas*, 613 F. Supp. 1459, 1472 (S.D.N.Y. 1985)); *Saivest*

*Empreendimentos Imobiliarios E. Participacoes, Ltda v. Elman Investors, Inc.*, 117 A.D.3d 447,

450, 985 N.Y.S.2d 54, 57 (2d Dep't 2014) (dismissing claim against defendant corporation's

---

[11] Although Plaintiffs have asked the Court to pierce General Trade's corporate veil, they have
done so in the context of their motion for default judgment only.  Pl. Mem. at 23-25.  Even if
they had sought to disregard General Trade's corporate form in the summary judgment context,
the request would have been denied for the reasons explained below.  *See infra* n.18.

president because there were no allegations that his "actions in this transaction were made for his

personal gain, as distinguished from gain for [the corporation]"); *Kats v. E. 13th St. Tifereth*

*Place, LLC*, 73 A.D.3d 706, 708-09, 900 N.Y.S.2d 362, 363 (2d Dep't 2010).[12]  As discussed in

the next section, there is no question that Aziz kept approximately $278,000 of the money that

Plaintiffs paid him in his capacity as an officer of General Trade.  *See, e.g.*, Aziz Dep. at 192,

210.  The record is similarly clear that Aziz used this money, not for corporate purposes or to

benefit General Trade, but rather on "[a]ll the damages [the transaction] made in *my* life."  Aziz

Dep. at 210 (emphasis added).  Therefore, Plaintiffs' motion for summary judgment against Aziz

for breach of contract is granted, with damages to be calculated following additional submissions

from the parties.

### 2.    Plaintiffs' Conversion Claim

Plaintiffs also seek summary judgment against Aziz for conversion.[13]  As the basis for

their claim, Plaintiffs assert that Aziz refused to tender to Richardson the remainder of the money

that Plaintiffs had paid him in accordance with the contract, and that Aziz then spent this sum in

a manner unrelated to the contract.  Pl. Mem. at 21.  Under New York law, "[c]onversion is the

unauthorized assumption and exercise of the right of ownership over goods belonging to another

to the exclusion of the owner's rights."  *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403-

---

[12] New York case law relies somewhat interchangeably on this proposition to hold corporate officers liable for both breach of contract and for related claims sounding in tort.

[13] As a general matter, "under New York law . . . 'an action for conversion cannot lie where damages are merely sought for breach of contract.'"  *AD Rendon Commc'ns, Inc. v. Lumina Americas, Inc.*, No. 04-CV-8832 (KMK), 2006 WL 1593884, at *2 (S.D.N.Y. June 7, 2006) (quoting *Citadel Mgmt., Inc. v. Telesis Trust, Inc.*, 123 F. Supp. 2d 133 (S.D.N.Y. 2000)); *accord Wechsler v. Hunt Health Sys., Ltd.*, 330 F. Supp. 2d 383, 431 (S.D.N.Y. 2004).  In the interest of completeness, and as an alternative basis for liability, the Court will address the merits of Plaintiffs' motion for summary judgment on their conversion claim.  Nevertheless, Plaintiffs will not be entitled to any additional damages from Aziz for the conversion claim as this amount is already encompassed in the damages for breach of contract.

04 (2d Cir. 2006) (quoting *Vigilant Ins. Co. of Am. v. Hous. Auth.*, 87 N.Y.2d 36, 44 (1995))

(internal quotation marks omitted).  "Two key elements of conversion are (1) plaintiff's

possessory right or interest in the property and (2) defendant's dominion over the property or

interference with it, in derogation of plaintiff's rights." *Arena v. Plandome Taxi Inc.*, No. 12-

CV-1078 (DRH) (WDW), 2014 WL 1427907, at *18 (E.D.N.Y. Apr. 14, 2014) (quoting

*Colavito v. N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43, 50 (2006)) (internal quotation marks

omitted).

Here, there are no material issues of fact regarding Plaintiffs' conversion claim and they

have proven their entitlement to judgment as a matter of law.  Declarations (with exhibits)

submitted by Abbas and Eldesouky establish that they and their companies made six wire

transfer payments to an account designated by Aziz and held in his name, and provided a check

made out to Aziz, for a total of $686,090. *See* Eldesouky Decl., ¶ 12, Ex. H (Piraeus Bank

Payment Confirmation); Abbas Decl., ¶¶ 15, 27-28, Ex. N (check made out to Aziz dated

January 13, 2011),[14] Ex. R (bank transfer confirmations); Aziz Dep. at 180.  Aziz then spent this

money in a manner not contemplated by the contract. *See* Aziz Dep. at 192, 210-12.

Plaintiffs had a possessory right to the funds they transferred to Aziz's account.  Where

the property at issue in a conversion claim is money, "it must be specifically identifiable." *Cruz*

*v. TD Bank, N.A.*, 855 F. Supp. 2d 157, 174 (S.D.N.Y. 2012) (quoting *Republic of Haiti v.*

*Duvalier*, 211 A.D.2d 379, 384, 626 N.Y.S.2d 472, 475 (1st Dep't 1995)); *accord LoPresti v.*

*Terwilliger*, 126 F.3d 34, 41-42 (2d Cir. 1997); *Thys v. Fortis Sec. LLC*, 74 A.D.3d 546, 547,

903 N.Y.S.2d 368, 369 (1st Dep't 2010).  In New York, "[t]he funds of a specific, named bank

account are sufficiently identifiable" for purposes of a conversion claim. *Republic of Haiti*, 211

---

[14] The copy of the check initially provided as Exhibit N to Abbas' declaration is illegible.  At the
Court's direction, Plaintiffs' counsel provided a more legible copy.  (Dkt. No. 71).

A.D.2d at 384, 626 N.Y.S.2d at 475; *accord Manufacturers Hanover Trust Co. v. Chem. Bank*, 160 A.D.2d 113, 125, 559 N.Y.S.2d 704, 712 (1st Dep't 1990) (wire transfer to specified account sufficient to state conversion claim). Accordingly, Plaintiffs have proved the first element of a conversion claim.

Plaintiffs have also demonstrated that Aziz interfered with their possessory interest in the money provided to him, satisfying the second element of their conversion claim. In a conversion claim based on money, the funds must "be subject to an obligation to be returned or to be otherwise treated in a particular manner." *Cruz*, 855 F. Supp. 2d at 174 (quoting *Republic of Haiti*, 211 A.D.2d at 384). "When funds are provided for a particular purpose, the use of those funds for an unauthorized purpose constitutes conversion." *Capital Distributions Servs., Ltd. v. Ducor Exp. Airlines, Inc.*, 440 F. Supp. 2d 195, 208 (E.D.N.Y. 2006) (citing *Hoffman v. Unterberg*, 9 A.D.3d 386, 388, 780 N.Y.S.2d 617 (2d Dep't 2004)); *see also Newbro v. Freed*, 409 F. Supp. 2d 386, 395 (S.D.N.Y. 2006) (defendant's "unauthorized wire transfer from one bank account to another" constituted conversion), *aff'd*, 2007 WL 642941 (2d Cir. Feb. 27, 2007). Here, Plaintiffs transferred money to Aziz for a particular purpose, namely, so that it would be used as payment for the provision of flaxseed by General Trade. Pl. Mem. at 21; Eldesouky Decl., ¶¶ 12-14; Abbas Decl., ¶¶ 15, 26-29. Plaintiffs have further demonstrated that Aziz exercised dominion over this money in derogation of their rights. Instead of using these funds to purchase flaxseed on Plaintiffs' behalf (whether from General Trade or some other company) at the agreed-upon price, Aziz transferred at least $443,000 to Pyramid's bank account to purchase flaxseed from Richardson in Pyramid's name. Aziz Dep. at 180-82, 191-92, 203-04.[15] While Richardson agreed to credit the money it had received from Pyramid towards

---

[15] While Aziz testified at his deposition that the account in his name to which Plaintiffs made numerous wire transfers is actually a Pyramid account, Aziz Dep. at 216-21, the wire payment

27

Plaintiffs' subsequent flaxseed contract with Richardson, Abbas Decl., ¶ 73, Aziz neither

returned the remaining money to Plaintiffs nor provided it to Richardson, despite agreeing to do

so at Plaintiffs' request.  Abbas Decl., ¶¶ 80-82, Ex. X (Settlement Agreement between

Richardson, Pyramid, Al-Yasmin, and Tanseem dated June 15, 2011); Aziz Dep. at 192.  At his

deposition, Aziz admitted that the remainder of Plaintiffs' money is "nowhere" because he spent

it, although he could not remember on what.  Aziz Dep. at 192, 210-12.  Therefore, the Court

grants summary judgment to Plaintiffs on their conversion claim against Aziz.

### 3.  Plaintiffs' Fraud Claim

Finally, Plaintiffs seek summary judgment against Aziz on their common law fraud

claim.[16]  Specifically, they assert that Aziz misrepresented his "ownership of flaxseed at the price

contracted for and its immediate availability," his "ownership and interest in a flaxseed farm and

storage warehouse and distribution facility in Canada," and "that the flaxseed being tested [by

Plaintiffs' agent] belonged to and could be sold by Aziz and General Trade." Pl. Mem. at 18.

To prevail on a fraud claim under New York law, a plaintiff must show that "the defendant made

a material misrepresentation of fact, knowing of its falsity and with the intent to induce reliance,

---

confirmation lists Aziz as the holder of the account, *see* Eldesouky Decl., Ex. H (Piraeus Bank
Payment Confirmation); Abbas Decl., Ex. R (bank transfer confirmations).  This defendant-
generated ambiguity does not create a material question of fact to preclude summary judgment,
particularly given the Court's finding that Pyramid is Aziz's alter ego, as discussed below.

[16] Plaintiffs also pleaded a cause of action under the Wire Fraud Act, 18 U.S.C. § 1343; however,
Plaintiffs do not appear to have moved for summary judgment on this ground.  In any event,
this claim is without merit.  It is well-established that there is no private right of action under
the federal Wire Fraud Act.  *See, e.g., Carvel v. Franchise Stores Realty Corp.*, No. 08-CV-
8938 (JGK), 2009 WL 4333652, at *11 (S.D.N.Y. Dec. 1, 2009) (citing *Official Publications,
Inc. v. Kable News Co.*, 884 F.2d 664, 667 (2d Cir. 1989)); *Lichtenstein v. Reassure Am. Life
Ins. Co.*, No. 07-CV-1653 (DLI) (LB), 2009 WL 792080, at *10 (E.D.N.Y. Mar. 23, 2009);
*Atkins v. Apollo Real Estate Advisors, L.P.*, No. 05-CV-4365, 2008 WL 1926684, at *16
(E.D.N.Y. Apr. 30, 2008) (collecting cases).  Accordingly, Plaintiffs' fourth cause of action is
dismissed.

and that the plaintiff justifiably relied on that misrepresentation to her detriment." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 491 (2d Cir. 2014) (citing *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559 (2009)); *accord Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*, 478 F. App'x 679, 681 (2d Cir. 2012). Moreover, "[b]ecause New York law imposes a heightened standard of proof for fraud, 'the appropriate summary judgment question is whether the evidence on the record could support a reasonable jury finding that the [claimant] has shown each element' of a fraud claim 'by clear and convincing evidence.'" *N. Shipping Funds I, L.L.C. v. Icon Capital Corp.*, 998 F. Supp. 2d 301, 318 (S.D.N.Y. 2014) (quoting *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 888 F. Supp. 2d 478, 484 (S.D.N.Y. 2012)); *see also Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 181 (2d Cir. 2007).

Applying these standards, the Court finds that there remain disputes of fact in the record as to the precise representations Aziz made to Plaintiffs regarding the ownership and availability of flaxseed for their purchase, which create questions about Aziz's scienter better suited to resolution by the finder of fact. *See Press v. Chem. Inv. Servs. Corp.*, 166 F.3d 529, 538 (2d Cir. 1999) ("Whether a given intent existed is generally a question of fact, appropriate for resolution by the trier of fact.") (citation omitted); *Wechsler v. Steinberg*, 733 F.2d 1054, 1058 (2d Cir. 1984) ("Issues of motive and intent are usually inappropriate for disposition on summary judgment."); *In re Celestica Inc. Sec. Litig.*, No. 07-CV-0312 (GBD), 2014 WL 4160216, at *10 (S.D.N.Y. Aug. 20, 2014) ("The fact-intensive nature of a scienter inquiry often militates against granting judgment as a matter of law."). Plaintiffs contend that Aziz told them "he *owned* a farm that grows flaxseed" and "was in *possession* of a quantity of flaxseed of good quality that he could sell." Eldesouky Decl., ¶¶ 4-5 (emphasis added). By contrast, in his deposition, Aziz

testified only that he told Plaintiffs he "*had* flaxseed that he could produce" to them.  Aziz Dep. at 99-100.

While this might seem like an overly fine parsing of words, it becomes a material distinction when examining scienter.  "Scienter requires both knowledge of falsity and a strong inference of intent to induce reliance.  A strong inference of intent can be alleged through either (1) 'facts that show that the defendant had both motive and opportunity to commit fraud' or (2) 'facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'"  *LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC*, 10 F. Supp. 3d 504, 516 (S.D.N.Y. Mar. 31, 2014) (quoting *Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir. 2001)).  In his deposition, Aziz described himself as a middleman in the flaxseed deal, and explained that, when he and Plaintiffs were negotiating the contract, he had a producer ready to supply the flaxseed at the agreed-upon price.  Aziz Dep. at 73, 115-17, 119-20.  It was to this producer that Aziz and Abdo travelled in Canada to take a flaxseed sample for testing, and Aziz testified that, at the time, Abdo was aware that the flaxseed belonged to this producer, not Aziz.  *Id.* at 120, 122-26. The record makes plain that the arrangement with this producer did not come to fruition, and according to Plaintiffs, there was never such an arrangement at all.  However, Aziz's testimony creates a factual question regarding his intent.  The record before the Court is not such that a reasonable jury would be compelled to find that Plaintiffs have proved Aziz's scienter by clear and convincing evidence.  Accordingly, Plaintiffs' motion for summary judgment on their fraud claim against Aziz is denied.

**D.      Motion for Default Judgment Against Pyramid**

A default judgment may be awarded in accordance with Rule 55 of the Federal Rules of Civil Procedure "[w]hen a party against whom a judgment for affirmative relief is sought has

failed to plead or otherwise defend" against an action. Fed. R. Civ. P. 55(a). "Rule 55 sets forth

a two-step process for an entry of default judgment." *GuideOne Specialty Mutual Ins. Co. v.*

*Rock Community Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010) (citing *Enron Oil*

*Corp. v. Diakuhara*, 10 F.3d 90, 95-96 (2d Cir. 1993)). First, the movant must file an affidavit

demonstrating that the party against whom default judgment is sought has been properly served

and has failed to defend, upon which the clerk of the court enters the party's default into the

record. *See id.*; Fed. R. Civ. P. 55(a); Local Rule 55.1. "Second, after the clerk of the court

enters default against a party, if that party fails to appear or otherwise move to set aside the

default pursuant to Rule 55(c), the court may enter default judgment." *GuideOne Specialty Mut.*

*Ins. Co.*, 696 F. Supp. 2d at 208 (citing Fed. R. Civ. P. 55(b)).

     "In light of [a defendant's] default, a court is required to accept all of the [plaintiff's]

factual allegations as true and draw all reasonable inferences in its favor." *Finkel v.*

*Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). This is because "a party's default is deemed to

constitute a concession of all well pleaded allegations of liability." *Broad. Music, Inc. v. Pamdh*

*Enterprises, Inc.*, No. 13-CV-2255 (KMW), 2014 WL 2781846, at *2 (S.D.N.Y. June 19, 2014)

(quoting *Greyhound Exhibitgroup, Inc. v. E.L. U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir.

1992)) (internal quotation marks omitted); *accord Mickalis Pawn Shop, LLC*, 645 F.3d at 137.

"However, a 'district court has discretion under Rule 55(b)(2) once a default is determined to

require proof of necessary facts and need not agree that the alleged facts constitute a valid cause

of action.'" *Clark v. Gotham Lasik, PLLC*, No. 11-CV-1307 (LGS), 2013 WL 4437220, at *3

(S.D.N.Y. Aug. 20, 2013) (quoting *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir.

1981). "In other words, even after a default, 'it remains for the court to consider whether the

unchallenged facts constitute a legitimate cause of action, since a party in default does not admit

conclusions of law.'" *Johnson & Johnson*, 2013 WL 4048295, at *8 (quoting *Labarbera v. ASTC Labs., Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010)). Therefore, a default "only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant." *Taizhou Zhongneng Imp. & Exp. Co. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013).

Moreover, the complaint must comply with the pleading standards of the Federal Rules of Civil Procedure, which require more than a "formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The pleadings must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Despite a defendant's default, "a complaint containing only '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do[es] not suffice.'" *Johnson & Johnson*, 2013 WL 4048295, at *8 (quoting *Iqbal*, 556 U.S. at 678). Furthermore, where, as here, a complaint contains allegations of fraud, these claims must also satisfy the heightened pleading standard of Rule 9(b) by describing "the circumstances constituting fraud" with particularity.

Here, Plaintiffs have moved for default judgment against the corporate defendants, General Trade and Pyramid, as a result of their failure to answer the complaint or otherwise appear in this action. However, because the Court does not have personal jurisdiction over General Trade, as discussed *supra*, default judgment against this defendant is not appropriate. Accordingly, the analysis in this section focuses solely on Pyramid.

As a preliminary matter, Pyramid is in default. After Plaintiffs experienced difficulties attempting to serve Pyramid (Dkt. No. 38 at 15), with permission of the Court, Plaintiffs served Pyramid with the summons and complaint by sending them via Federal Express to Aziz at his

home address. (Dkt. Nos. 42, 53). However, Pyramid has not answered or appeared through counsel nor has it made any argument as to why the Court should not enter default judgment against it. "Although Rule 55(a) contemplates that entry of default is a ministerial step to be performed by the clerk of court, a district judge also possesses the inherent power to enter a default." *Mickalis Pawn Shop*, 645 F.3d at 128 (internal citations omitted). The Court therefore hereby enters a default against Pyramid and will proceed to consider whether Plaintiffs have stated valid causes of action against Pyramid in the Complaint. For the reasons discussed herein, the Court will grant Plaintiffs' motion as to their conversion claim, but not for breach of contract or fraud.

### 1.    Plaintiffs' Fraud Claim

Plaintiffs' request for a default judgment against Pyramid for fraud is denied. Their fraud claim is based on the theory that Aziz induced them to enter into a contract with General Trade for the purchase of flaxseed. Compl. ¶ 18. Although under the doctrine of *respondeat superior*, "[t]he misconduct of an agent . . . is imputed to the corporation if committed within the scope of the agent's employment," *In re Parmalat Sec. Litig.*, 684 F. Supp. 2d 453, 471-72 (S.D.N.Y. 2010), *aff'd sub nom. Food Holdings Ltd. v. Bank of Am. Corp.*, 423 F. App'x 73 (2d Cir. 2011), Plaintiffs have not alleged that Aziz's misrepresentations were made in his capacity as a representative of Pyramid. To the extent that Aziz made fraudulent misrepresentations on behalf of anyone or any entity other than himself, it was to induce Plaintiffs to enter a contract with General Trade, not Pyramid. Compl., Ex. 1 (Contract dated January 13, 2011).

### 2.    Plaintiffs' Breach of Contract Claim

Plaintiffs' motion for default judgment against Pyramid on their breach of contract claim is also denied. As previously noted, "[i]t is hornbook law that a non-signatory to a contract

cannot be named as a defendant in a breach of contract action unless it has thereafter assumed or been assigned the contract." *Ferring B.V.*, 4 F. Supp. 3d at 625. Accepting all of Plaintiffs' factual allegations in the Complaint as true, because Pyramid was not a party to the contract at issue in this case (nor assigned the contract), *see* Compl., Ex. 1 (Contract dated January 13, 2011); Subject Matter Juris. Mem. at 12, 15, it cannot be liable for a breach of that contract. *See Javier*, 2014 WL 3058456, at *9. Plaintiffs have not alleged that Pyramid assumed liability for the contract or that Pyramid and General Trade were alter egos.

### 3.    Plaintiffs' Conversion Claim

By contrast, the Complaint states a valid cause of action for conversion against Pyramid and accordingly, the Court will grant default judgment on this ground. While Plaintiffs do not specifically refer to a payment made to Pyramid in the body of the Complaint, Plaintiffs attached copies of the wire transfers that they made to Aziz and Pyramid in furtherance of their flaxseed purchase as an exhibit to the Complaint. Compl., Ex. 2. One of these wire payment confirmations reflects a $35,500 wire transfer from Tasneem to Pyramid on May 12, 2011. Pyramid's bank account is "sufficiently identifiable" property for purposes of a conversion claim. *Republic of Haiti*, 211 A.D.2d at 384, 626 N.Y.S.2d at 475. Plaintiffs also allege that "Defendant[s] neither delivered the goods nor returned the money." Compl. ¶ 1. Instead, approximately $443,000 of Plaintiffs' money was sent to Richardson pursuant to a contract between that company and Pyramid, and the remaining funds were never returned despite Plaintiffs' request. Compl. ¶¶ 10, 13-15. Accepting these facts as true, Plaintiffs have stated a claim for conversion by Pyramid of the $35,500 that Plaintiffs wired directly to the company, and therefore a default judgment can properly be granted.

### E.    Piercing the Corporate Veil

Plaintiffs have requested that the Court pierce the corporate veils of General Trade and Pyramid to hold Aziz liable for any default judgment rendered against the companies. Pl. Mem. at 27. The Court, having determined that it does not have jurisdiction over General Trade, will only evaluate Plaintiffs' request to pierce Pyramid's corporate veil. Pyramid has been found liable for converting the $35,500 that Plaintiffs wired to it. For the reasons that follow, the Court will pierce Pyramid's corporate veil to hold Aziz liable for this amount as well.[17]

#### 1.    Legal Standard Under New Jersey Law

"A federal court sitting in diversity jurisdiction applies the choice of law rules of the forum state," *Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 433 (2d Cir. 2012), and in New York, "the law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders." *Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank*, 552 F. App'x 13, 15 (2d Cir. 2014) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)) (internal quotation marks omitted). Because Pyramid was incorporated in New Jersey, that state's veil-piercing jurisprudence governs (not New York law, as Plaintiffs have argued, *see* Pl. Mem. at 23-24).

"Piercing the corporate veil is an equitable remedy through which a court may impose liability on an individual or entity normally subject to the limited liability protections of the corporate form." *Mall at IV Grp. Props., LLC v. Roberts*, 2005 WL 3338369, at *3 (D.N.J. Dec. 8, 2005); *accord Sean Wood, LLC v. Hegarty Grp., Inc.*, 422 N.J. Super. 500, 517 (App. Div. 2011). It serves to "remedy[] the 'fundamental unfairness [that] will result from a failure to

---

[17] As a practical matter, Aziz will already be liable to pay this amount to Plaintiffs because it is subsumed within the damages owed for breach of contract.

disregard the corporate form.'" *Trs. of the Nat'l Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk*, 332 F.3d 188, 193 n.6 (3d Cir. 2003) (quoting 1 Fletcher Cyc. Corp. § 41.25) (second alteration in original). Where a party seeks to depart from "the fundamental principle that a corporation is a separate entity from its principal," it "bears the burden of proving that the court should disregard the corporate entity." *State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC*, 646 F. Supp. 2d 668, 679 (D.N.J. 2009) (quoting *Tung v. Briant Park Homes, Inc.*, 287 N.J. Super. 232, 240 (App. Div. 1996)) (internal quotation marks omitted). In New Jersey, to pierce the corporate veil, a party must demonstrate that the shareholder (1) "so dominated the [corporation] that it had no separate existence but was merely a conduit" for the shareholder and (2) "abused the privilege of incorporation by using the [corporation] to perpetrate a fraud or injustice, or otherwise to circumvent the law." *Linares v. Richards*, No. 08-CV-3243 (RRM) (RLM), 2009 WL 2386083, at *3 (E.D.N.Y. Aug. 3, 2009) (quoting *State, Dep't of Envtl. Prot. v. Ventron Corp.*, 94 N.J. 473, 501 (1983)); *see also N. Am. Steel Connection, Inc. v. Watson Metal Products Corp.*, 515 F. App'x 176, 179-80 (3d Cir. 2013).

The first prong of this analysis is a fact-intensive inquiry, designed to determine whether there is "such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist." *Mall at IV Grp. Props., L.L.C.*, 2005 WL 3338369, at *3 (citation omitted). Courts consider, among other things:

> gross undercapitalization . . . failure to observe corporate formalities, non-payment of dividends, the insolvency of the debtor corporation at the time, siphoning of funds of the corporation by the dominant stockholder, non-functioning of other officers or directors, absence of corporate records, and the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders.

*Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 172 (3d Cir. 2002) (citation omitted); *accord Verni ex rel. Burstein v. Harry M. Stevens, Inc.*, 387 N.J. Super. 160, 200 (App. Div. 2006).

For the second prong, abuse of the corporate form, "a plaintiff need not prove common law fraud, but instead demonstrate that the defendants, via the corporate form, perpetrated 'a fraud, injustice, or the like,' a less exacting standard." *State Capital Title & Abstract Co.*, 646 F. Supp. 2d at 679 (quoting *Mall at IV Grp. Props., L.L.C.*, 2005 WL 3338369, at *3). Courts look for "the hallmarks of that abuse," which include "the engagement of the subsidiary in no independent business of its own but exclusively the performance of a service for the parent and, even more importantly, the undercapitalization of the subsidiary rendering it judgment-proof." *OTR Associates v. IBC Services*, 353 N.J. Super. 48, 52 (App. Div. 2002).

### 2.    Piercing Pyramid's Corporate Veil

Here, while the Complaint is devoid of factual allegations tending to support Plaintiffs' alter ego theory, declarations submitted in support of Plaintiffs' motions provide a factual basis on which the Court can resolve this issue. The Court recognizes that there is authority for the proposition that, when evaluating a request to pierce the corporate veil in the context of a default judgment, a court is limited to the well-pleaded allegations in the complaint. *See, e.g.*, *In re Shore to Shore Realty Inc.*, No. 8-08-72760 (REG), 2011 WL 350526, at *5-7 (E.D.N.Y. Feb. 1, 2011); *Bravado Int'l Grp. Merch. Servs., Inc. v. Ninna, Inc.*, 655 F. Supp. 2d 177, 197-98 (E.D.N.Y. 2009). Nonetheless, the Court has before it testimony by Aziz that supports the piercing of Pyramid's corporate veil to hold him personally liable, and it would be inefficient at this juncture for the Court to require Plaintiffs to amend their complaint or bring a separate action to pierce the corporate veil if they are unable to collect on the judgment against Pyramid.

Based on the admissions in Aziz's deposition testimony, the Court will pierce Pyramid's corporate veil to hold Aziz liable for the default judgment entered against the company. *See, e.g.*, *GuideOne Specality Mut. Ins. Co.*, 696 F. Supp. 2d at 210 (looking for "allegations [in the complaint] or *any other documentation* to support counsel's [alter ego] argument").

Plaintiffs, through Aziz's deposition testimony, have presented facts that support a finding that Aziz "so dominated" Pyramid that it was "merely a conduit" for Aziz's own dealings. *Linares*, 2009 WL 2386083, at *3. When examining the factors relevant to this conclusion, Aziz's deposition testimony is striking. Although the fact that a corporation is closely-held does not, on its own, justify piercing the corporate veil, *State Capital Title & Abstract Co.*, 646 F. Supp. 2d at 679-80, here, Aziz made explicit that, as Pyramid's sole shareholder, he and the corporation are indistinguishable, *see* Aziz Dep. 41-42. Pyramid has no officers, directors, and does not otherwise engage in the formalities of a corporation such as board meetings. Aziz Dep. 41-42; *see, e.g.*, *OTR Associates*, 353 N.J. Super. at 53 (piercing corporate veil where company had no assets or income, employees, or separate office). Aziz incorporated Pyramid in April 2011, shortly after the parties entered into the contract at issue here. Helal Decl., Ex. A (Pyramid Certificate of Incorporation). He then capitalized the company with Plaintiffs' $70,000 down-payment, which check was written by Abbas to Aziz pursuant to the contract with General Trade. Aziz Dep. at 42-43; Abbas Decl., Ex. N (check made out to Aziz dated January 13, 2011). The record further reflects that Aziz treated Pyramid's operating account as his own. *See, e.g.*, *Westfield Ins. Co. v. Interline Brands, Inc.*, 2013 WL 6816173, at *21 (D.N.J. Dec. 20, 2013) ("New Jersey courts have pierced the corporate veil under an alter ego theory where corporate defendants commingled funds.") (citation omitted). After transferring a portion of the money Plaintiffs paid pursuant to the

contract to Pyramid, Aziz spent the money remaining after Pyramid's transaction with

Richardson on "[a]ll the damages [the transaction] made in my life," although he could not recall

when or on what. Aziz Dep. at 210-12.

Plaintiffs have also met the "less exacting standard" to prove that Aziz, "via [Pyramid's]

corporate form, perpetrated 'a fraud, injustice, or the like.'" *State Capital Title & Abstract Co.*,

646 F. Supp. 2d at 679 (quoting *Mall at IV Grp. Props., L.L.C.*, 2005 WL 3338369, at \*3).

Although the Court declined to grant summary judgment on Plaintiffs' fraud claim, it is a

charitable characterization, to say the least, that Aziz was imprudent in this flaxseed transaction

to Plaintiffs' pecuniary detriment. After Plaintiffs paid more than $700,000 to Aziz pursuant to

the contract with General Trade, *see* Eldesouky Decl., ¶ 12, Ex. H (Piraeus Bank Payment

Confirmation); Abbas Decl., ¶¶ 26-28, Ex. R (bank transfer confirmations), Aziz transferred at

least $443,000 of Plaintiffs' money to Pyramid—a corporation which, on the face of the contract

at issue, had nothing to do with the flaxseed transaction. Aziz Dep. at 180-82, 203-04.  Then,

after spending that money on flaxseed at a higher price and for a greater volume, Aziz proceeded

to use the remainder of Plaintiffs' money on unknown personal expenditures, unrelated to

General Trade's performance under the contract. Aziz Dep. at 192, 210-12. This course of

conduct left Plaintiffs without the flaxseed they had purchased or a solvent entity to sue to

recover the amounts paid and constitutes a sufficient injustice to warrant piercing Pyramid's

corporate veil.[18]

---

[18] The Court also notes that, even if it had jurisdiction over General Trade, which it does not, the
Court would decline to pierce General Trade's corporate veil as Plaintiffs have not adduced
any evidence that the company is Aziz's alter ego. Plaintiffs describe General Trade as "a
corporation which [Aziz] controls and owns," Pl. Mem. at 23; however, in his deposition, Aziz
explained that his brother, Ashraf Ahmed, incorporated the company and is its sole
shareholder. Aziz Dep. at 24-26, 28, 37. Aziz's testimony reflects that he was a director,
(Chairman), *see* Compl., Ex. 1 (Contract dated January 13, 2011), officer (President), and
employee (receiving a 20% commission on business generated). Aziz Dep. at 26.  Plaintiffs

## IV.   DAMAGES

Although Plaintiffs are entitled to damages from Aziz and/or Pyramid, questions remain regarding the precise amount.  Specifically, there are inconsistencies in the record regarding the amount of money Aziz transferred to Richardson that was subsequently deducted from Plaintiffs' flaxseed purchase (as discussed *supra* n.5).  *Compare* Eldesouky Decl., ¶ 18; Abbas Decl., ¶ 59; Aziz Dep. at 224, *with* Abbas Decl., Ex. V (April 26, 2011 contract between Pyramid and Richardson), Ex. W (June 15, 2011 contract between Tasneem, Al-Yasmin, and Richardson). The record also requires further development as to Plaintiffs' efforts to mitigate damages after the breach of contract, including the amount Plaintiffs paid to Richardson, the expenses associated with the loans Abbas took out to finance Plaintiffs' flaxseed purchase, and the revenue Plaintiffs received from selling the flaxseed in Egypt.  Accordingly, the Court will order that further submissions be made as part of an inquest into damages following a conference with the parties.

## V.   CONCLUSION

For all of the foregoing reasons, the Court resolves Plaintiffs' motions as follows:

1.      Summary judgment against Aziz for breach of contract is granted, with the amount of damages to be determined on the basis of further submissions from the parties.

2.      Summary judgment against Aziz for conversion (in the alternative to the breach of contract claim) is granted.

3.      Summary judgment against Aziz for fraud is denied.

---

also contend that General Trade was "grossly undercapitalized, its sole assets being the funds paid to it by the plaintiffs."  Pl. Mem. at 24.  By contrast, Aziz testified both that he had "no idea" about the company's capitalization and that it had "not much" money, again identifying his brother as the person with the relevant information.  Aziz Dep. at 37-38.

4.      The Court *sua sponte* dismisses Plaintiffs' fourth cause of action for violation of the Wire Fraud Act.

5.      All claims against General Trade are dismissed for lack of personal jurisdiction.

6.      Default judgment against Pyramid is granted as to the conversion claim in the amount of $35,500.  The Court will pierce Pyramid's corporate veil to hold Aziz liable for Pyramid's default.  Default judgment against Pyramid is denied as to the fraud and breach of contract claims.

7.      The Court will address Plaintiffs' renewed request for attorneys' fees as part of the inquest into damages.

8.      The Court will hold a conference on January 22, 2015 at 2:30 p.m. to chart the further course of the case given the rulings set forth in this Opinion and Order.  Plaintiffs' counsel should consider, *inter alia*, whether they wish to proceed with their fraud claim in light of the Court's other rulings (and in particular, whether any damages obtained as a result of a successful fraud claim would exceed what they are otherwise entitled to on their other claims) and what submissions they would make in support of their position as part of a damages inquest with respect to their breach of contract and conversion claims.

**SO ORDERED.**

Dated: New York, New York
        December 19, 2014

JAMES L. COTT
United States Magistrate Judge

**A copy of this Opinion and Order has been mailed to the following:**

Hatem Abdel Aziz
77 Twin Oaks Oval
Springfield, New Jersey 07081